Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard, First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANKUSH BUDHRAJA,<br><br>Plaintiff,<br><br>v.<br><br>VAALCO ENERGY, INC., ANDREW L. FAWTHROP, GEORGE MAXWELL, CATHY STUBBS, and FABRICE NZE-BEKALE,<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Ankush Budhraja, by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to his, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against VAALCO Energy, Inc. ("VAALCO" or the "Company"), VAALCO's Board of Directors (the "Board" or the "Individual Defendants," collectively with VAALCO and the Board, the "Defendants"), for violations of

Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of efforts to sell the Company to TransGlobe Energy Corporation ("Parent") via merger subsidiary ("Merger Sub" and collectively with Parent, "TransGlobe"), and to enjoin an upcoming stockholder vote on an stock and cash proposed transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a July 13, 2022 filing with the United States Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").  Under the terms of the Merger Agreement, VAALCO shareholders will receive a 0.6727 share of TransGlobe common stock for each share of VAALCO common stock owned. As a result, VAALCO shareholders interests will be diluted.

3.      Thereafter, on August 19, 2022, VAALCO filed a Preliminary Proxy Statement on Form PREM14A ("Preliminary Proxy Statement") attaching the proxy statement with the SEC in support of the Proposed Transaction. On August 29, 2022, VAALCO filed the Definitive Proxy Statement on form DEFM14A ("Definitive Proxy Statement" and collectively with Proxy Statement, "Proxy Statement") in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Proxy Statement in an effort to Plaintiff, to vote in favor of the Proposed Transaction. The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for VAALCO and TransGlobe, provided by VAALCO management to the Board and the Board's financial advisor Stifel Nicolaus & Company, Incorporated ("Stifel") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Stifel, if any, and provide to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

## PARTIES

7.      Plaintiff is a citizen of California and, at all times relevant hereto, has been a VAALCO shareholder.

7.      Defendant VAALCO is a Delaware corporation whose principal executive office is located at 9800 Richmond Avenue, Suite 700, Houston, Texas 77042.  VAALCO's common stock is publicly traded on New York Stock Exchange under the symbol "EGY."

8.      Defendant Andrew L. Fawthrop ("Fawthrop") has served as director of Company at all relevant times. In addition, Fawthrop serves as the Chairman of the Board of Directors.

9.     Defendant George Maxwell ("Maxwell") has served as director of Company at all relevant times.   In addition, Maxwell also serves as the Company's Chief Executive Officer ("CEO").

10.     Defendant Cathy Stubbs ("Stubbs") has served as director of Company at all relevant times.

11.     Defendant Fabrice Nze-Bekale ("Nze-Bekale") has served as director of Company at all relevant times.

12.     The Defendants named in paragraphs 8-11 are referred to herein as "Individual Defendants" or "Director Defendants."

13.     Non-Party Parent is an international oil and gas company with operations concentrated in Canada and Egypt.  TransGlobe is incorporated under the laws of Alberta, Canada and has its headquarters in Calgary. Transglobe's common stock is publicly traded on NasdaqCM under the symbol "TGA."

14.     Non-Party Merger sub is a subsidiary of parent created solely to complete the Proposed Transaction.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

16.    Personal jurisdiction exists over each defendant either because the defendants conduct business in or maintain operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

17.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

18.    VAALCO Energy, Inc., an independent energy company, acquires, explores for, develops, and produces crude oil and natural gas. The company holds Etame production sharing contract related to the Etame Marin block located offshore in the Republic of Gabon in West Africa. It also owns interests in an undeveloped block offshore Equatorial Guinea, West Africa. VAALCO Energy, Inc. was incorporated in 1985 and is headquartered in Houston, Texas.

19.    The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in a May 3, 2022 press release announcing its 2022 First Quarter Financial Results, the Company highlighted such milestones as net income of $12.2 million ($0.20 per diluted share) and Adjusted Net Income of $21.1 million ($0.36 per diluted share) as well as the funding of $23.1 million in cash capital expenditures.

20.     Speaking on the positive results, Defendant CEO Maxwell commented in the Press Release, "As we look to the second quarter and the remainder of 2022, we are excited by the results of our drilling campaign, continued strong commodity pricing, and potential organic growth opportunities at Etame and Equatorial Guinea as well as inorganic opportunities that we continue to evaluate. Our ability to execute on our strategy and deliver strong operational results allows us to continue to return meaningful cash to shareholders through our dividend while continuing to enhance the overall value of our assets."

21.     The financials and optimism are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by VAALCO. Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

22.     Nevertheless, the Individual Defendants have caused VAALCO to enter into the Proposed Transaction.

***The Flawed Sales Process***

23.     As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

24.     Significantly, the Proxy Statement discusses numerous financial advisors that the Company consulted without provided critical information to Company stockholders such as the extent of compensation paid, or still owed, the scope of their duties, the services rendered, or even their identity. Despite relaying the existence of these advisors, the Proxy Statement provides no further information other than referring to the advisors as a "prior financial advisor" and "external consultants."

25.     The sales process was carried out with one goal in mind: to enter into a transaction with TransGlobe. The Proxy Statement fails to disclose adequate reasoning why no pre-transaction market check was conducted for potentially interested third parties and other viable strategic alternatives.

26.     Notably, the Proxy Statement fails to disclose why the strategic committee created to oversee the Proposed Transaction was not comprised solely of disinterested directors.

27.     Further, despite negotiating a stock for stock transaction, the Board failed to ensure a collar mechanism was included in the merger agreement to prevent a precipitous fall in the stock price.

28.     Additionally, the Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Parent, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

29.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

30.     On July 13, 2022, VAALCO and TransGlobe issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **HOUSTON and CALGARY, Alberta, July 14, 2022 (GLOBE NEWSWIRE) -** - VAALCO Energy, Inc. (NYSE: EGY; LSE: EGY) ("VAALCO") and TransGlobe Energy Corporation (TSX: TGL; NASDAQ: TGA; AIM: TGL) ("TransGlobe") (VAALCO and TransGlobe together, the "Combined Company") announced today that they have entered into a definitive arrangement agreement (the "Arrangement Agreement") pursuant to which VAALCO will acquire all of the outstanding

common shares of TransGlobe in a stock-for-stock strategic business combination transaction valued at US$307 million (the "Transaction"). Under the terms of the Arrangement Agreement, VAALCO will acquire each TransGlobe share for 0.6727 of a VAALCO share of common stock, which represents a 24.9 percent(1) premium per TransGlobe common share based on the companies' respective 30-day volume weighted average share prices as of market close on July 13, 2022. The Transaction will result in VAALCO stockholders owning approximately 54.5 percent and TransGlobe shareholders owning approximately 45.5 percent of the Combined Company.

**Strategic Rationale for the Transaction**

The combination of VAALCO and TransGlobe will create a world-class African-focused E&P Company supporting sustainable growth and stockholder returns, and provide a host of benefits to the Combined Company's stockholders and other stakeholders

The Transaction will bring together two complementary businesses, creating an operated, full-cycle portfolio of low-risk, high return assets under a production and development-oriented business model:

- Assets located in prolific and established basins in Egypt, Gabon, Equatorial Guinea and Canada, with significant future growth potential;
- Combination of two highly capable subsurface / technical, operational and business development teams enabling the pooling of operational best practices, skills and technology across the combined portfolio; and
- A highly experienced management team with an established and multi-decade track record of value creation in the Combined Company's areas of operation;

The Combined Company will have a larger, and more diversified reserves and production base, enhancing risk management, increasing portfolio optionality to high-grade and sequence investment projects towards the highest-return projects, as well as increasing access to a broader set of capital sources relative to each company on a standalone basis. The management of VAALCO and TransGlobe estimate:

- Combined 2022 mid-point production guidance of 19,100 barrels of oil equivalent per day ("boepd") on a net revenue interest ("NRI") (96 percent oil & liquids) basis across Egypt, Gabon and Canada and 24,400 boepd on a working interest ("WI") basis;
- Combined proved (1P) reserves on an NRI basis of 32 million barrels of oil equivalent ("MMboe") (92 percent oil) and 41 MMboe on a WI basis (92

percent oil) (as at January 1, 2022 in the case of VAALCO and as at December 31, 2021 in the case of TransGlobe)(2); and

- Combined proved plus probable (2P) reserves on an NRI basis of 51 MMboe (90 percent oil) and 66 MMboe (91 percent oil) on a WI basis (as at January 1, 2022 in the case of VAALCO and as at December 31, 2021 in the case of TransGlobe)(2);

- The Combined Company will be in a net cash(3) position, with US$53 million in combined net cash as of March 31, 2022 (prior to the receipt of US$44.6 million in April 2022 from VAALCO's March 2022 lifting), and have operational free cash flows to underpin sustainable stockholder returns and growth while maintaining sufficient liquidity and a continued robust balance sheet;

- The Combined Company will reinforce VAALCO's and TransGlobe's existing commitment to financial discipline and stockholder returns, with a target annualized dividend of US$28 million, an annualized target of approximately 25 cents per share (with payments to be made quarterly), and with a focus on further enhancing stockholder distributions through returning excess cash via share buybacks and/or dividends;

- The Combined Company will have an attractive inventory of organic growth projects across the portfolio in all regions, and will be more favorably positioned to self-fund, optimize and generate value from these projects on account of the Combined Company's superior operational and technical capabilities and financial resources, relative to each of VAALCO and TransGlobe on an individual basis;

- In addition, with increased scale and broader geographical operations, it is expected that the Combined Company will be well positioned to benefit from additional targeted inorganic growth in Africa, with reference to strict strategic, financial and operational criteria;

- Stockholders in the Combined Company should benefit from a more liquid investment, with an increased number of shares traded on the NYSE and LSE, a combined stockholder profile and increased visibility in the public capital markets, building on the strong equity performance of each of VAALCO and TransGlobe in recent years; and

- The Boards of Directors of both companies have unanimously approved the Transaction.

**George Maxwell, VAALCO's Chief Executive Officer, said:**

"This transformational transaction is consistent with VAALCO's strategic growth objectives of expanding our African footprint and providing an enlarged platform to deliver long-term, sustainable value for our stockholders. The respective portfolios complement one another well and result in a diverse, full-cycle asset base which materially increases our production, more than doubles our reserves, and significantly enhances our ability to generate meaningful cash flow. Just as important, this combination results in a financially stronger company with no net

debt, significant cash on the balance sheet and the size and scale to better fund and execute on a robust set of organic opportunities while delivering accretive long-term growth objectives.

"VAALCO and TransGlobe share similar corporate cultures with firm commitments to financial discipline, stockholder value, operational excellence and positive ESG impact. As such, we believe this transaction is mutually beneficial for the broader stakeholders of both companies and reinforces the ability of the Combined Company to deliver on those commitments. We look forward to engaging with both sets of equity holders as we re-emphasize the mutually beneficial nature of the proposed transaction and the vision for the stronger Combined Company."

**Randy Neely, TransGlobe's President and Chief Executive Officer, said:**

"We are very pleased to bring together two leading international oil and gas companies, each with decades of operational excellence in Africa. Under the stewardship of a joint VAALCO and TransGlobe board, we are confident that the assets of VAALCO and TransGlobe will continue to provide strong shareholder returns. The additional scope and scale of the combined entity will provide a larger platform, which will provide greater stability to TransGlobe's practice of distributing cash to shareholders as well as growth investment in TransGlobe's operations in Egypt and Canada. The TransGlobe management team is committed to working with George, Ron and their team to ensure a successful combination of our industry-leading teams."

**Management, Board and Corporate Matters**

- The Combined Company will continue to be led by George Maxwell as Chief Executive Officer and Ron Bain as Chief Financial Officer, with the executive team of TransGlobe remaining with the business through a three to six month transition period.
- The Combined Company's Board of Directors will be proportionally comprised of VAALCO and TransGlobe non-executive directors, with Andrew L. Fawthrop as Chair, David Cook, Edward LaFehr, Tim Marchant, Fabrice Nze-Bekale, and Cathy Stubbs as non-executive directors and George Maxwell as a director and Chief Executive Officer;
- TransGlobe's technical teams in Canada and Egypt provide skillsets that are applicable to the entire combined portfolio;
- VAALCO will remain a Delaware corporation with its corporate headquarters situated in Houston, Texas
- VAALCO's shares will continue be listed on the NYSE and are intended to be readmitted to trading on the Standard Segment of the LSE, both under the ticker symbol "EGY"; and

- VAALCO intends to apply for the cancellation of trading of TransGlobe's shares on AIM, and the delisting of TransGlobe's shares from the TSX and TransGlobe's shares will be delisted from the Nasdaq.

**The Materially Misleading and/or Incomplete Proxy Statement**

31.   On August 19, 2022, the VAALCO Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

32.   Specifically, the Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Proxy Statement fails to disclose:

    a.   Adequate disclosure as to why no pre-transaction market check was conducted;

    b.   Adequate disclosure as to the identity of all financial advisors, the extent of compensation paid, or still owed to each advisor, the scope of each advisors duties, and the extent of services rendered with respect to the Proposed Transaction;

    c.   Adequate disclosure as to why no committee consisting solely of disinterested directors was appointed to oversee the sales process;

    d.   Adequate disclosure as to why no collar mechanism was included in the merger agreement;

e.   Whether the confidentiality agreements entered into by the Company with Parent differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

f.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including The Consortium, would fall away; and

g.   Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning VAALCO and TransGlobe's Financial Projections*

33.   The Proxy Statement fails to provide material information concerning financial projections for VAALCO and TransGlobe provided by VAALCO management to the Board and Stifel and relied upon by Stifel in its analyses.  The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

34.   Notably the Proxy Statement reveals that as part of its analyses, Stifel reviewed, "certain internal financial analyses, financial projections, reports and other information concerning VAALCO and TransGlobe prepared by the management of VAALCO and TransGlobe."

35.   Therefore, the Proxy Statement should have, but fails to provide, certain information in the projections that VAALCO management provided to the Board, Stifel, and Stifel. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or []

market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007)

36.     With regard to the *VAALCO Projections* prepared by VAALCO, the Proxy Statement fails to disclose material line items for the following:

        a.   With regard to the *Low Case, Base Case, and High Case* Scenarios:

            (i)   Operating Expenditures, including all underlying inputs necessary to compute this metric, including specifically: production expense.

37.     With regard to *TransGlobe Projections* prepared by TransGlobe, the Proxy Statement fails to disclose the following:

        a.   With regard to the *Low Case, Base Case, and High Case* Scenarios:

            (i)   Operating Expenditures, including all underlying inputs necessary to compute this metric, including specifically: production expenses, operating expenses, and selling costs.

38.     The Proxy Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the alternative cases of projections rely.

39.     The Proxy Statement fails to provide a complete disclosure of projections created for the Pro Forma Company.

40.     The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

41.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this

information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

42.     Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Stifel' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Stifel*

43.     In the Proxy Statement, Stifel describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

44.     With respect to the *Discounted Cash Flow Analysis - TransGlobe*, the Proxy Statement fails to disclose the following:

    a.   The numeric degree of risk assigned to each case based scenario;

    b.   TransGlobe's general and administrative expenses;

    c.   TransGlobe's assumed tax rate;

    d.   The value of payments in respect of cash-settled securities;

    e.   TransGlobe's net cash;

    f.   TransGlobe's working capital;

    g.   The value of other assets and liabilities utilized in this analysis;

14

h.  The specific inputs and assumption used to determine discount rates ranging from 10.5% to 15%;

i.  The TransGlobe's weighted average cost of capital;

j.  The number of fully diluted outstanding shares;

k.  The present value of the net-entitlement cash flows generated by TransGlobe's proved reserves or proved and probable reserves;

l.  The amount of the back-dated entitlement payments receivable from Egyptian General Petroleum Corporation as a result of the merger of TransGlobe's three Eastern Desert production-sharing concessions in Egypt;

m.  The net proceeds of the impending sale of TransGlobe's Canadian Viking assets;

n.  TransGlobe's projected corporate taxes; and

o.  TransGlobe's liabilities in respect of cash settled securities.

45.  With respect to the *Discounted Cash Flow Analysis - VAALCO*, the Proxy Statement fails to disclose the following:

a.  The future after-tax cash flows that VAALCO could be expected to generate from its proved reserves as of December 31, 2021;

b.  The future after-tax cash flows that VAALCO could be expected to generate from its probable reserves as of December 31, 2021;

c.  The Company's projected net taxes;

d.  The Company's net cash;

e.  The Company's working capital;

f.  The value of other assets and liabilities utilized in this analysis as provided by

VAALCO management;

    g.  The inputs, metrics, and assumptions used to determine discount rate of 17.0%;

    h.  The Company's weighted average cost of capital;

    i.  The number of fully diluted outstanding shares of VAALCO stock;

46.    With respect to the *Selected Public Companies Analysis - TransGlobe*, the Proxy Statement fails to disclose the following:

    a.  The specific metrics for each company compared;

    b.  The selected range of 2022 EV/EBITDA multiples as well as the inputs, metrics, and assumptions used to determine that range;

    c.  The selected range of NTM 2023 EV/EBITDA multiples as well as the inputs, metrics, and assumptions used to determine that range;

    d.  The selected range of 2023 EV/EBITDA multiples as well as the inputs, metrics, and assumptions used to determine that range;

    e.  The extent of proved and probable reserves used in this analysis;

    f.  The specific adjustments made by VAALCO to the proved and probable reserves production profile provided by TransGlobe;

47.    With respect to the *Selected Public Companies Analysis - VAALCO*, the Proxy Statement fails to disclose the following:

    a.  The specific metrics for each company compared;

    b.  The selected range of 2022 EV/EBITDA multiples as well as the inputs, metrics, and assumptions used to determine that range;

    c.  The selected range of 2022 EV/ NTM EBITDA multiples as well as the inputs, metrics, and assumptions used to determine that range; and

     d.  The selected range of 2023 EV/EBITDA multiples as well as the inputs, metrics, and assumptions used to determine that range.

48.    With respect to the *Selected Precedent Transactions Analysis - TransGlobe*, the Proxy Statement fails to disclose the following:

     a.  The specific metrics for each selected transaction compared;

     b.  The specific date on which each transaction closed;

     c.  The value of each transaction compared;

     d.  The selected range of Premium to Last Closing Price multiples as well as the inputs metrics and assumptions used to determine that range;

     e.  The selected range of Enterprise Value/Proved and Probable Reserve multiples as well as the inputs metrics and assumptions used to determine that range;

     f.  The selected range of Enterprise Value /Average Daily Production multiples as well as the inputs metrics and assumptions used to determine that range; and

     g.  The selected range of Enterprise Value /NTM EBITDA multiples as well as the inputs, metrics, and assumptions used to determine that range.

49.    With respect to the *Analysts' Price Targets*, the Proxy Statement fails to disclose the following:

     a.  The specific price targets and research analyst estimates consulted; and

     b.  The Wall Street research firms who authored each estimate or report.

50.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

51.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value

and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public VAALCO stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**<u>(Against All Defendants)</u>**

52.     Plaintiff repeats all previous allegations as if set forth in full herein

53.     Defendants have disseminated the Information Statement in favor of the Proposed Transaction.

54.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

55.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

56.    The Information Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Information Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

57.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

58.    The Individual Defendants were at least negligent in filing an Information Statement that was materially misleading and/or omitted material facts necessary to make the Information Statement not misleading.

59.    The misrepresentations and omissions in the Information Statement are material to Plaintiff and the Class, and at present fail to provide complete information if such misrepresentations and omissions are not corrected.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against All Defendants)**

60.     Plaintiff repeats all previous allegations as if set forth in full herein.

61.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Information Statement was materially misleading to Company stockholders.

62.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Information Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Information Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Information Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

63.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of VAALCO's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information

available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Information Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Information Statement and are therefore responsible and liable for the misrepresentations contained herein.

64.     The Individual Defendants acted as controlling persons of VAALCO within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause VAALCO to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled VAALCO and all of its employees.  As alleged above, VAALCO is a primary violator of Section 14 of the Exchange Act and SEC Rule Information Statement.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: August 31, 2022                    **BRODSKY & SMITH**


By:  _/s/ Evan J. Smith_____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*